Our final argued case this morning is Blackhawk Network v. Interactive Communications International, 2022-1650. May it please the Court. The Patent Trial and Appeal Board erred as a matter of law in this expert and lead counsel for Petitioner during argument conceded that there is no express disclosure of the payment confirmation limitation, and yet the Board refused to apply this Court's precedence on inherency. And so in this instance where this limitation was presented under this concession from Mr. Hutton that the payment confirmation limitation is not expressly taught, we have a concession or admission by lead counsel for Petitioner to the Board during argument that payment confirmation is not taught. The Board said it logically follows that the Board is not supported by the record below. The Board made that finding not on the basis of Mr. Hutton's declaration that says that payment confirmation must be present in SHREC, classic language of anticipation, or I'm sorry, of inherency, and it's concededly not an obviousness-based argument here. In the opposition brief at page 16, counsel for Petitioners conceived that they did not make an obviousness argument in their petition. The obviousness argument was an alternative argument that was presented in a reply brief and are even adamant in their briefing here to this Court that the Board did not make an obviousness finding as to this limitation. And so if the Board had no substantial evidence, the Board said we are persuaded that SHREC's description would have suggested to the skilled artisan that the store-backed Office 240 would include an instruction to cause payment confirmation. Do you disagree? I disagree because this Court's precedents, including the Eli Lilly case, the personal web technologies case versus Apple, recognize that this case, like so many, isn't determined by other cases. Each case depends on its own facts, and we've got facts here that you disagree with, but they're findings of fact, aren't they? They're findings of fact by the Board on pages 43 and 44 of the appendix that are not supported by any substantial evidence. And in a case where the alleged basis for disclosing the limitation is that it's neither expressly taught nor inherently present, for the Board to make those findings when no one on the Board is a person of ordinary skill in the art is inappropriate. And the Court could use this case to clarify, not in a context... make findings from the perspective of persons of skill in the art, even without themselves being of skill in the art. So I'm not sure that that argument gets you very far. The findings here are based upon a record where Mr. Malika and Mr. D'Alesensori provided undisputed evidence on behalf of the patent owner that the lottery systems... But the Board read the patent and disagrees with your experts. I mean, the patent is itself evidence, isn't it? I'm sorry, the patent owner's patent, the 894 patent? No, the reference. The Schreck reference. The Schreck reference is evidence. The Board can read it and disagree with your expert's reading of it. I mean, it's cited in portions in the reference that it says supports its views. I know you disagree, but I mean, that's the way the Board read it. And I mean, if we find that those... the places it's cited support the Board, then it's a substantial reference case, isn't it? We don't think so, Your Honor, because the Board didn't apply this Court's precedence on inherency. And instead... I really don't understand why we're getting caught up in this. I mean, maybe the Board would have been better to be clear about what it was doing, but it read the reference and said, this is what the reference teaches us. And even though the specific words you want to find aren't there, it said the reference still teaches that. I don't know that that's necessarily an inherency. It could just be an express disclosure in other words. And it said, this reference necessarily includes... and I don't want to use the word necessarily, because then you're going to tell me that's an inherency. There said, the reference discloses this limitation. In fact, it just added, might be implicit disclosure. I mean, the Board read it and sees it there. Aren't they allowed to do that? I don't think the Board can do that in this case where the expert concedes that there's no express disclosure, counsel concedes there's no express disclosure, and then the Board draws... If they think both experts are wrong, they can disregard the expert testimony, right? That's the first place they go to determine whether something's disclosed as the reference. Yes, I recognize that the Board purports to make findings based upon its own interpretation, not supported by the expert testimony proffered by the petition, and also purportedly by reading in between the lines regarding a disclosure that even Mr. Hutton, the expert for the other side, acknowledged was not necessarily present on the face of Shrek. And we believe that the error, both as a matter of law and also in terms of the fact findings, is that on a record where, at best, the inference being drawn is about the possibility of a disclosure that's not expressly made being supported by an inference. On the purported legal error, what authority do you reference to implicitly disclose something that maybe no expert says is there? What authority prevents them from doing that? Well, there are two cases discussed in the record, Judge Stark. One is the Eli Lilly versus Los Angeles Biomedical Research case. That case was cited by the petitioners. It actually supports our view of the appropriate outcome here. The court held, in that case, that to anticipate a reference must do more than suggest the claimed subject matter. But a fact finder can find it does more than suggest. If it discloses, just not in the words, that would make it an express disclosure. But does Eli Lilly say a fact finder can't do that? No. The facts of this case, though, are very similar to the Eli Lilly case in that, at page 43 of the appendix, the board said that the Schreck reference will suggest... I guess I'm more focused on the purported legal error. I understand you think the facts don't support what the board found, but does Eli Lilly say a fact finder, like the board, can't read into a prior art reference and see something there that may not be there in black and white, but is implicitly there and would be understood by one of skill in the art? Just as a legal matter, do we say they can't do that sort of thing? I understand under this court's precedence that the requirement is either to have an express disclosure, words on the page, or to have an inherent disclosure. And so you're saying there is no other way a fact finder can find something in a prior art reference. It's just those two possibilities. That's correct. And so I'm asking you, where have we said that? So personal web technologies versus Apple is another case that recognizes that a disclosure could be expressed or it could be inherent. It goes on to say there's no other way to find something in a reference. My understanding of this court's precedence is that to be an anticipatory disclosure, you must have an express disclosure, words on the page, or you need to satisfy the more rigorous standard for inherency, necessarily. But does it have to be the exact words? If it's expressing the same concept in different words, then that's an express disclosure, isn't it? That's not inherency, it's an express disclosure. Hypothetically, in another case, I would agree with you. In this case, where both the opposing counsel and Mr. Hutton can see that it's not there. I mean, I don't care about any of those concessions because the board just read this reference. So if you put away all those concessions, if the board looked at this and said they don't use this precise language, but we read this reference to disclose that concept nonetheless, they can do that and they don't have to do that under inherency, right? I disagree. I think that in a circumstance where the words are not on the page and you're not talking about obviousness, I would have a different answer for you if the argument was obvious. I mean, I don't understand how that can possibly be the law, particularly in some of these complicated software cases and things like that, where everybody makes up their own language for concepts and one company may use language X and one company may use language Y. If they're the same concept, it's not inherency, it's just a different way of expressing the same thing. Now, I know you disagree that this is a different way of expressing the same thing, but that's finding an express disclosure, not an inherency disclosure, isn't it? Only in a circumstance where there's support in the record that an expert would have understood it that way and that's absent in this case. Why does there need to be support that an expert would understand it that way? Couldn't the board or whoever the fact finder read it and say, yes, this is the same concept being disclosed? If there was support, I should have said, from a person of ordinary skill in the art, perhaps not an expert, then I would agree with you, but not in a case where that evidence is missing. I recognize I'm into my rebuttal time. Unless the court has other questions, I'll reserve that time. We will save it for you, Mr. McPherson. Good morning, Your Honors. Patrick McPherson, Dwayne Morris for the appellee. This is a parallel disclosure case. The 894 patent and Shrek are both directed to the same problem. They propose the same solution and they use the same architecture. However, they use different words to describe the same concept. That does not get you to inherency. As Judge Hughes was just discussing, the standard really is what does the reference convey to a person of ordinary skill in the art? Well, the reference requires a receipt, right? Yes. Which is what the claim purportedly tried to avoid. I'm not sure what you mean by trying to avoid. Let's read the claim. The claim term at issue is providing to the Lottery Administration payment confirmation. That's the claim term. That's at issue. And the board identified the facts that it said supported that. One of them was Shrek discloses the pre-printed lottery ticket is not eligible to win unless payment and activation occurs. To a person of ordinary skill in the art, unless payment occurs means payment confirmation must be determined. That's what our expert said. You're saying the receipt is payment confirmation. The receipt could be, but in this instance it's something else. Because it goes on to say the cash register would get authorization for payment for the winning process and the board relied on that. So that means it's not the cash register doing it and the cash register has the receipt, but it's getting authorization from somewhere else. And the next fact they relied on is Shrek says the game provider could check if the ticket 300 is a winner and could send information back that the ticket is a winner and authorize winner payment. And the board said we know what's required for authorizing winner payment. It has to be activated and you need the payment has to occur. That's payment confirmation. That's the claim limitation disclosed using different words. It's an expressed disclosure. It's not inherent disclosure. Now that's the facts before the board and understanders potential evidence could a reasonable mind say that's adequate to support the conclusion of the board, the conclusion that Judge Lurie wrote, that one of skill in the art would understand that the payment confirmation was provided to the lottery administration so they could authorize payment. Yes, but if you look further than that, what did the appellate tell the board those facts meant? They didn't tell the board anything. They said it doesn't mean that, but they didn't say what does it mean. Right, so there's no there's no facts for what that means other than our experts and the board understood that and agreed with it. And these are not the type of facts that a judge can't read for himself and say yeah, of course in order to have payment authorization you need to have the two requirements. So this is a case where there's no inherency here. This is an express disclosure to one of skill in the art. Your friend insists no expert said there's an express disclosure and that counsel on your side also agreed there's no express disclosure. Is he factually correct about the record? He's factually incorrect. I'm the counsel and my position has always been, and I think the law's there, my Latin is not that good, but there's something about in hike verba that the support for a claim does not need to be verbatim. And every time that question was asked I would always say the words do not say payment confirmation. I was very clear that it does not expressly use the same language as the claims verbatim. And what about your your expert or or any other witness testimony? Where in the record can we find it saying it payment confirmation limitations expressly disclosed and shred? The question was always posed does this say that? And the answer is no. So then it must be inherent. And we're it doesn't say that. And so counsel saying, well, then it must be inherent. And our expert says, well, yes, because it's not. It doesn't say that. So the language that our experts use, and we're objecting to, because it's really a legal conclusion of whether something's inherent or not. Is this the words don't say that. And we agree the words do not. You never had your expert affirmatively support your argument that one of skill in the art would read this as disclosed in Shrek. No, our expert did say that. And where can I find that? Where the board relied where the board relied on their citation to one of skill in the art. And they went through what our experts said was the state of the art. And they identify references. Can you give me some should be appendix page 44. I think 44 in the board decision. Yes. Starting on page 43. And, and they're citing to your expert somewhere in 43, 44 on 40 on 43. They're citing to the exact same language our experts cited to on Shrek. But the citation, are they sorry, are they citing to Shrek or are they citing to your expert analyzing? Sure. They're citing to the exact same portions of Shrek that are expert identified by site by line number. But, but as best as we can tell, they're doing it, the work themselves. They're not saying we find substantial evidence in the petitioner's testimony. Correct. No, I wouldn't go there. There's language that says on page 44, they say taken into account the knowledge, reasonable inferences and creativity that a skilled artisan possessed at the time of the invention, which indisputably included a recognition that the lottery administration defines the information that must be provided to activate a ticket. We find a natural result flung from the game provider system, being able to determining a winning ticket and provide authorization of a winning ticket is that the store back office provided payment confirmation for the ticket to the game provider system before that determination. As such, we find Shrek's disclosure sufficient to establish a skilled artisan that the store back office would include an instruction to cause a payment confirmation for the preprinted lottery ticket to be provided. I don't know that you need expert support for, in order to meet the substantial evidence standard, but, but I would like to know whether you think you have expert support. I can read what the board found in Shrek. They may be right about it, but do you have expert support for what the board says is in Shrek? Okay. I think we're the factual basis for saying why this claim limitation and showed the claim limitation was found and then cited to Shrek. So on a claim by claim basis, when he got down to the payment confirmation limitation, he says, the person working on skill in the art would understand this discloses that the board then adopted that position and adopting that position. They say taken into account the knowledge that was the preference for going there. So where your experts said, here's what a person skilled in the art where they would find the payment confirmation disclosed in Shrek. Yeah. I misunderstood your question. I'm sorry. On page 47 and 48 and 49, those are sites to the board. I'm sorry. Appendix page 151, okay. Yes. Which is our, which is our petition at page 47. So it's appendix 151, 152 and 153. Our expert goes through and identifies where Shrek has this and finishes up a person and it finishes up on page 153. That's a person of ordinary skill in the art understood that Shrek discloses providing payment confirmation to the lottery administration. So that was part of the and put it into their decision. But I do agree with you. So even if the board didn't specifically cite your expert, the experts report can still be substantial evidence for its conclusion. Yes, judges. And I want to go where you went before and where I think judge Stark was going. The judge, the judges of the board themselves can reach Shrek. This is a case where the technology is not that deep or hard that the judges can't understand for themselves and do that. So this is a case where the judges could have done that independently and cite those exact same facts. Shrek does teach at column six, line 62 to 64 that for claiming or payment of a lottery prize, the pre-printed ticket needs to be presented along with the cash register receipt. Is that not telling one a skill of the art that you always have to have the receipt as well as the ticket? No, your honor, because I think if you continue reading there, you're looking at the board. This was before the board as well. And the board said, no, what this, the next line says, in a case of any dispute, the cash register receipt with ticket activation information, such as price, the activation authorization code needs to be presented. So in the dispute, you could use your cash register receipt for that. And I go back to say, this is a parallel disclosure case. If you look at what the 894 patent has, it has the same, it has the same disclosure. And it says, it talks about providing the cash register receipt. In case of, you provide the printed receipt and that's used to confirm activation. So even though it's not required, you would provide it in case there's some type of authentication you want to show. And that's in the appendix page 84, that's column three, it's 19 through 24. It's a parallel disclosure of using the cash register receipt, not for payment confirmation, but to show activation. So both the 894 and Shrek disclose that. This is an obviousness case, correct? It's an obviousness case overall. There were 53 claims, some of which we had to rely on modifying Shrek with a knowledge of personal oriented skill in the art. Other claims, like claim one, we showed that the Shrek disclosure disclosed each and every limitation there. Overall, the board found it was obvious under 103, because that's the ground we put forward. But not every single claim required an obviousness analysis. Claim one did not require an obviousness analysis. Have we talked about the concept of an implicit disclosure in context with an obviousness analysis? Another way to put it is, if I disagree with you that Shrek expressly discloses the payment confirmation limitation, and you say this isn't about inherency, does that mean you lose? Well, no, because something that's expressed can also be inherent, and this may be one of those it's necessary for that information. Why is there not a third category? It's not inherent, it's not expressed, but it's implicit. I do not subscribe to a Palin's argument that it's either expressed or inherent. I don't think that's the law. I think the law is the reference must reasonably convey to a person of oriented skill in the art. And that can be done many different ways, not one, not two, not three. And I think this board of jurors sometimes uses the term to get away from the express, because you can see how it could be used against me that I agreed it was no express disclosure. The board sometimes, the court sometimes use the word actual disclosure, which is something not just expressly stated, but if it's understood by one of skill in the art, that's an actual disclosure, even though different words are used. Like in this case, same concept, different words used, that's an actual disclosure. And if you start using express words or express concepts, and that's where it gets a little murky. But I think here, the facts are clear here, and the facts are substantial evidence for which the board properly found that that limitation was disclosed in Shrek. And there's no further questions. Thank you, Your Honors. Thank you, Counselor. Mr. Ottwood has some rebuttals on it. A few quick points in closing. I would like to direct the court to Appendix 2666, where counsel said it does not expressly say that, no, with respect to the payment confirmation disclosure in Shrek. Again, repeated, I agree it's not expressly stated, but even though it's expressly stated, it can still be understood by one of skill in the art. That takes us then, again, that's at 2666, that takes us to Mr. Hutton. If you unpack what's actually at Appendix 569, Mr. Hutton's opinion is that payment confirmation must be provided. That's the entirety of his analysis. That's the entirety of his opinion. He parrots the language and says it must be provided. Now, when asked during deposition what that meant, Mr. Hutton said, twice, at Appendix 1406 and then Appendix 1408, the assumption is that it was sent. We made the assumption that Shrek certainly would have included payment confirmation. That's the record we were confronted as the patent owner with responding to when our patent owner responded. And for you to win, we have to find that no reasonable fact finder could agree with that, that that could not possibly add up to substantial evidence. That's what we have to find, right? Or, if you agree with me, where Mr. Hutton also testified during deposition that his theory was one of inherent disclosure, which we cite in our papers, that when their expert is agreeing that it's an inherency theory and there's no showing that the inherency standard is met on these facts where he agrees that's his theory, that there isn't an inherent disclosure and that the board should not have found the limitation present. Unless the court has any other questions. Thank you to both counsel. The case is submitted and this concludes today's argument.